HOUSTON, Justice.
Vickey Smith Welch, executrix of the estate of Lee Roy Smith, deceased, and the defendant, Virginia Smith Lambert, were half sisters. Smith was their father. At the time of Smith’s death in April 1991, a certificate of deposit was in the joint names “Lee Roy Smith or Virginia Smith Lambert,” with right of survivorship; and a checking account was in the joint names of “Lee Roy Smith and Virginia Smith Lambert,” with right of survivorship. After Smith’s death, Lambert withdrew the proceeds from the joint accounts and deposited them into her individual account.[1] According to Welch, Smith had changed the names on the accounts and had added Lambert’s name at a time when, she says, he was mentally incompetent and as the result of undue influence by Lambert. Consequently, Welch, as administratrix of Smith’s estate, sued Lambert to recover the funds removed from the accounts. The trial court, hearing ore tenus testimony, entered a judgment for Lambert. Welch appeals. We affirm.
It is well established that under the ore tenus rule, the trial court’s findings of fact are presumed correct and that its judgment based on those findings will be reversed only if the reviewing court finds it to be plainly and palpably erroneous after considering all of the evidence and all reasonable inferences that can logically be drawn from the evidence. See Ex parte Geneva City Board of Education, 575 So.2d 1114 (Ala.1990). The trial court’s judgment will be upheld if, under any reasonable aspect of the evidence, there is credible evidence to support it. Id.
In entering a judgment for Lambert, the trial court held, among other things, that “[Smith] was not subject to the domination or undue influence of [Lambert].” The trial court’s order reads as follows:
“In October and December 1990, Lee Roy Smith, who was the father of [Welch] and [Lambert], made certain changes to the signature cards with respect to a certificate of deposit and a checking account at First Bank of Boaz. Both of those deposits had been in the joint names of Smith or his late wife prior to her death in August 1990. The changes made by Smith which are the subject of this suit caused the deposit accounts to be in the joint names of himself or his daughter, Virginia Smith Lambert. According to the clear provisions of the signature card with respect to each account, the balance remaining in *344 the account upon the death of one party became the property of the surviving party to the account. Smith died in April 1991, leaving his daughter, [Lambert], as the surviving party with respect to both accounts. The court is of the opinion that under the parol evidence rule as applicable to bank deposit agreements under Alabama law, some of the eviden-tiary findings set forth below relative to the circumstances attendant to the changes in the bank accounts may be of no legal effect, but the court makes them nevertheless in the interest of completeness.
“[Welch] contends that [Smith] did not understand the import of the changes made by him to his bank accounts in the latter part of 1990, either because he was mentally incompetent or because he was subject to the domination or undue influence of [Lambert],
“The court finds that Smith, although beset by some physical infirmities associated with aging, remained mentally alert and competent throughout the relevant time period. In particular, the court takes note of the testimony of the three individuals who were friends or acquaintances of Smith, ..., who each testified that Smith was competent, keen and alert when they had an occasion to observe him during this period. Their testimony is supported by that of [one of Smith’s other daughters] and [Lambert], as well as other witnesses. The court also finds that the actions of Smith on October 4, 1990, — namely, placing his checking account at that time in the joint names of himself and [Lambert], so that he remained in full control of that account while at the same time placing his certificate of deposit in the name of himself or [Lambert] — support [Lambert’s] position that Smith was competent and understood the significance of his actions. The court also takes note of the testimony of the bank employee, ..., who testified that it was bank policy and practice to explain the survivorship provisions on the bank’s signature cards to individuals who open or make changes to joint accounts. Smith had been a customer of this bank for many years, during which he had maintained more than one joint account. Additionally, by the weight of the evidence, he retained throughout his life a keen interest in his financial affairs. The court concludes from the evidence presented that Smith understood the meaning of the relevant survivorship features of the signature cards when he made the changes in the accounts that are the subject of this suit.
“The court is also satisfied that Smith, despite his physical frailties, was not dominated by [Lambert] but instead retained his independent nature and remained ‘his own man ’ with respect to financial matters of this type during the time period in question.
“In summary, the court finds that the changes to the two bank accounts in the latter part of 1990 were made by Smith with the requisite degree of knowledge and understanding; that he was not subject to the domination or undue influence of [Lambert]; and that the transactions cannot be considered unfair or inequitable under the particular circumstances of this case.”
(Some emphasis added; some emphasis original.) Saxon v. Pickett, 601 So.2d 955 (Ala.1992); Lansford v. Gorham, 591 So.2d 63 (Ala.1991); Parr v. Godwin, 463 So.2d 129 (Ala.1984).
We have thoroughly reviewed the record, the briefs of the parties, and the trial court’s order, and after considering all of the evidence presented to the trial court and all of the inferences that could logically be drawn from that evidence, we hold that the trial court could reasonably have inferred that Lambert did not unduly influence her father, Lee Roy Smith. Therefore, we hold that the trial court’s judgment was not plainly and palpably erroneous.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.

. The funds from the certificate of deposit and the checking account, totaled $51,620.22.